The **HOME INSURANCE COMPANY,**
Appellant,

v.

Peter A. SMITH, Appellee.

No. 5136.

Court of Civil Appeals of Texas, Waco.

June 22, 1972.

Rehearing Denied July 20, 1972.

Pomeroy, Tekell & Book, Raymond T. Matthews, Houston, for appellant.

Ken Rolston, Houston, for appellee.

## OPINION

JAMES, Justice.

This is a Workmen's Compensation case, in which the jury awarded Appellee Smith total and permanent disability. The trial court entered judgment in accordance with the verdict, from which The Home Insurance Co. prosecutes this appeal.

■ The first three points of error contend that the jury findings of total and permanent disability are supported by (1) no evidence, (2) insufficient evidence, and (3) that said findings are against the great weight and preponderance of the evidence so as to be manifestly wrong and unjust. In oral argument before this Court, Appellant waived his first and second points; therefore, we will discuss Appellant's third point, namely, that the jury findings of total and permanent disability are against the great weight and preponderance of the evidence so as to be manifestly wrong and unjust. This point of error puts the duty on us as a Court of Civil Appeals to consider and weigh all the evidence in the entire record. In re King's Estate (Supreme Court 1951) 150 Tex. 662, 244 S.W.2d 660. After having carefully weighed all the evidence in the record we overrule this point.

Smith is thirty-three years of age, and has a wife and five minor children, four of whom lived in the home at the time of trial. Two of these four are his wife's by a former marriage, and two are Smith's. On August 29, 1969, Smith was driving a company truck from Houston, Texas, to Fort Worth, Texas, while in the employ of Wayne Duddleston Interests; and near the City of Fairfield in Freestone County, Texas, his truck was sideswiped by an oncoming vehicle. Smith's left arm and elbow were resting in the window on the driver's side; whereupon the oncoming vehicle sheared off the rear vision mirror, scraped the left side of the truck Smith was driving, and severely injured Smith's left arm and elbow. He sustained a compound, comminuted fracture of his left arm and elbow, being broken in at least three places, with the injuries extending into his left shoulder and neck. He was taken to a hospital at Fairfield, Texas, but due to the severity of the injuries was transferred to the Heights Hospital in Houston, Texas. Here he was placed under the care of a Dr. Medley, a company doctor. Surgery was performed on him, in which a steel pin about five inches in length was placed in his left arm. This steel pin was still in his arm at the time of trial, which was in November 1971, some two years and three months after the accident. His left arm was in a cast for about four months after the accident. A severe traumatic arthritis of his left arm and shoulder resulted from his injuries, which medical testimony showed would in reasonable medical probability get worse as time goes on.

Smith had been working in Houston, Texas, for Wayne Duddleston Interests, a construction firm, for about two months at the time of the injury. He was hired as a painter, with the understanding that he would be required to do some truck driving. He was an experienced painter, and had also had prior jobs as a truck driver. He preferred painting work to driving, and prior to the accident, his work for Wayne Duddleston Interests consisted of doing painting in new construction work of apartment areas in and around Houston, Texas. This work required stooping, bending, and working on scaffolds and ladders. He had to be able to climb scaffolds and ladders while carrying his buckets of paint and equipment, and be able to balance and secure himself while performing his painting work. Before the accident, he was healthy and able-bodied, and was able to

properly perform these tasks. After the accident, he was never able to carry weight on his left arm and did not have any security in holding himself while working.

Immediately following the accident, he was in the hospital at Houston for three days and thereafter was treated by Dr. Medley as an outpatient. He suffered a great deal of pain after the accident which has continued for the most part on up to the time of trial. The pain persists not only with use of the left arm and shoulder, but also with nonuse. About a week after the accident, he was given light work by his employer for about two months, consisting of carrying a clipboard around to the apartments under construction, and making a list of work that needed to be completed, and doing "touch up" painting and calking where needed. Thereafter, he did painting work for this same employer about three more months. Then he went to Fort Worth, Texas, and worked as a painter for a Mr. Martin for about three months, and then a Mr. Lee for another three or four months. He apparently was not able to perform his work satisfactorily because of his disability, and Mr. Lee laid him off saying that "work was slack". Smith knew at the time that work was not slack. He then took a job driving a truck at Texarkana, Arkansas, for about eight months. After this, about eight months before the trial, he went to Tyler, Texas, and got a job operating a dragline at a foundry, on which job he was working at the time of trial. He has to use both arms and both legs in operating a dragline, and has problems in doing this type work. At the time of trial, he still had pain and still used medication as a result of his injuries. Union wages for an experienced painter in the Houston, Texas, area is shown to be $5.85 per hour; whereas Smith makes $3.-04 per hour operating the dragline.

One Dr. Jacobi testified that from his examination of Smith that he was totally and permanently disabled for "working purposes", and further, that the traumatic arthritis Smith was shown to have in his left arm and shoulder would probably get worse in time.

Smith had not been able to do any manual or physical lifting since his injuries occurred; and although the truck driving and dragline operating did not involve heavy physical labor, he had trouble doing either. He has an eleventh grade education, together with some credit for schooling in motor work in the military service. He testified that he has altogether the equivalent of a high school education.

From our examination of the entire record, we believe the evidence is factually sufficient to support the jury's findings that Smith was totally and permanently disabled. Certainly such findings are not against the great weight and preponderance of the evidence so as to be manifestly wrong and unjust. Appellant's third point is accordingly overruled.

■ Appellee was earning $3.00 per hour immediately prior to the accident in question, and has earned substantially the same hourly wage in his job after the accident.

Where the evidence is factually sufficient to support the trial court's judgment for total and permanent incapacity, the judgment will not be reversed merely because there is evidence which establishes that the claimant is in fact working and earning money, regardless of the amount being earned. Trinity Universal Insurance Company v. Scott (Fort Worth CA 1961) 342 S.W.2d 348, error refused NRE. Indeed, numerous cases have held that the fact that a claimant continues to work and earn more money after an injury is not controlling on the question of total and permanent disability, but it is evidence to be considered with other facts and circumstances before the jury. See Travelers Insurance Co. v. Buffington (Eastland CA

**398**

1966) 400 S.W.2d 800, error refused NRE, and cases cited therein.

 The term "total incapacity" or "total disability" means that an injured person is disqualified from performing the usual tasks of a workman in such a way as to procure and retain employment, and does not imply any absolute disability to perform any kind of labor. Texas Employers Ins. Assn. v. Mallard (Supreme Court 1944) 143 Tex. 77, 182 S.W.2d 1000. An employee is not entitled to recover for total incapacity merely because he is unable to procure and retain employment in his usual occupation, but the term implies disability to perform the usual tasks of a workman, and not merely the usual tasks of any particular one trade or occupation. Mallard, supra; Texas Indemnity Ins. Co. v. Bonner (Waco CA 1950) 228 S.W.2d 348, error refused NRE.

Appellant's fourth point asserts the trial court erred in admitting testimony of Appellee Smith's wife regarding what activities Smith performed on the job after his injuries. However, Appellant makes no mention of this ground of error in his motion for new trial. This being a case tried to a jury, a motion for new trial is a prerequisite to Appellant's right to appeal. Rule 324, Texas Rules of Civil Procedure. A ground of error not distinctly set forth in the motion for new trial, in cases where a motion for new trial is required shall be considered as waived. Rule 374, TRCP. Appellant's fourth point, having thus been waived, is accordingly overruled.

Appellant's points five, six, and seven complain of alleged errors in the trial court's submission of Special Issue No. 1. However, the record contains no objections and exceptions to the court's charge, and therefore said points are waived. Rules 272, 274, TRCP; Williams v. Sperlich (Waco CA 1962) 362 S.W.2d 204, no writ history; Bituminous Casualty Corporation v. Moore (Tyler CA 1965) 396 S.W.2d 249, error refused NRE.

Judgment of the trial court is accordingly affirmed.

Affirmed.