**TEXAS EMPLOYERS' INSURANCE AS-SOCIATION, Appellant,**

v.

**Calvin L. DEMPSEY, Appellee.**

**No. 16307.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

March 28, 1974.

Rehearing Denied April 25, 1974.

Martin & Sperry, Jack R. Martin, Stephen L. Burkett, Houston for appellant.

George B. Huckeba, Stanley W. Crawford, Houston, for appellee.

PEDEN, Justice.

Workmen's Compensation case. In response to the jury's request, the trial judge had the court reporter read back to the jury the testimony of one doctor concerning the claimant's disability. This act of the trial judge and his selection of the testimony to be read are the subjects of the appellant insurance carrier's only complaints on this appeal.

The claimant, Mr. Dempsey, was employed by Armour and Company as driver of a delivery truck. He testified that on July 31, 1972, while he was unloading a hindquarter of meat in Lake Charles, La., he slipped and felt pain in his back and leg. He had to complete his deliveries that day without help, and by then he could hardly walk. When he returned to Houston that evening complaining of pain, arrangements were made for him to see a doctor the next day. There followed a series of visits to Dr. Geo. Hart and Dr. Donald Lazarz and several attempts to return to his job as a truck driver. About two months later he changed to a night checker's job that did not require lifting of heavy objects. He testified that he still experiences considerable back and leg pain, which prevents him from working at the job he had when he hurt his back.

The parties stipulated to accidental injury in the course and scope of employment, lump sum, attorney's fees and to total disability for four weeks and six days.

The jury found that appellee's injury caused total incapacity from July 31, 1972 to September 20, 1972, permanent partial incapacity beginning on September 21, 1972 and that this partial incapacity caused a reduction in his average weekly earning capacity of $60.00.

During its deliberations the jury sent a note to the trial judge, stating: "We want Dr. Lazarz's testimony pertaining to Mr. Dempsey's disability." After checking the doctor's testimony the judge instructed the court reporter to read the following excerpts of Dr. Lazarz's testimony:

"The court reporter: 'This is from the direct examination of Dr. Lazarz, questions by Mr. Crawford.'

"Q. All right, sir. Do you have an opinion based on reasonable medical probability as to your final diagnosis of the problems that Calvin Dempsey suffers as a result of this injury of July 31, 1972?

"A. I believe most people understand it as a chronic back. He has what we call a chronic lumbar strain, that—it is a back that has to do heavy work, he wouldn't be able to do the heavy work.

"Q. All right, sir. Do you have an opinion based on reasonable medical probability as to whether Mr. Dempsey would at this time or any time in the future be able to return to the type of employment that he's described in the history given you; that is, heavy lifting, long hours and lifting heavy forequarters?

"A. Well, this is always a difficult question to answer. It is hard to tell the future but he's had a trial over a year now and he hasn't been able to do the heavy work so I would have to base it on that, those findings, that he would not be able to return to that type of heavy work.

"The court reporter: 'The following questions were asked asked on cross examination by Mr. Martin:'

"Q. Now, that was the last time you saw him and I assume at that time you still did not find any reason from a med-

ical standpoint why he was not able to do his work; am I correct there?

"A. Yes, sir.

"Q. That is medically speaking, taking all your years of experience and you started and opened up your office here in 1965, is that right, sir?

"A. Yes, sir.

"Q. And taking the many patients—you see how many patients a week approximately with back problems?

"A. Fifty.

"Q. Fifty? Taking all this knowledge and experience and your training and your examination and history and everything from a medical standpoint, you didn't find anything why the man didn't resume his normal activities, did you? From a medical standpoint?

"A. His examination was normal.

"Q. All right.

"A. Yes, sir."

In appellant's two points of error it contends that the excerpts read to the jury constitute comments by the trial judge on the weight of the evidence and the excerpts chosen were not in response to the jury's request because there was no testimony in the record showing any disability to the claimant. That the excerpts indicated that the disability was permanent even though the jury did not ask whether it was, and this constituted a comment on the weight of the evidence.

"If the jury disagree as to the statement of any witness, they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness' testimony on the point in dispute; . . ." Rule 287, Texas Rules of Civil Procedure.

In Aetna Casualty and Surety Co. v. Scott, 423 S.W.2d 351 (1968, no writ), the 14th Court of Civil Appeals pointed out that by the very nature of the situation that arises in the application of Rule 287, the trial judge is required to exercise judgment and discretion in deciding what part of the testimony is relevant to the point in dispute; the testimony in question has not, of course, been reduced to writing at the time the request is made, and the task of selecting the portion relevant to the inquiry is not an easy one. Under such circumstances the judge may be given broad discretion and his action held erroneous only where there is an abuse of it with resulting harmful results.

We have carefully examined all 43 pages of the testimony given by Dr. Lazarz. We consider that the testimony selected by the trial judge in answer to the jurors' request amounted to an eminently fair and direct response.

Appellant contends on this appeal that there was no evidence of disability despite its stipulation in the trial court of total disability for four weeks and six days. Further, the testimony of either the claimant or Dr. Lazarz fully supports the jury findings of disability. Nor do we find any merit in appellant's assertion that the jury was not asking about permanency. The jury asked for the doctor's testimony about disability; the elements of disability are degree and duration.

We find no basis for the appellant's contention that the trial judge's response to the request amounted to a comment on the weight of the evidence.

By cross-point the claimant says this appeal was taken by the carrier without sufficient cause, and for delay only. He asks us to apply Rules 435 and 438, Texas Rules of Civil Procedure and assess 10% damages on the amount in dispute because the appeal was taken in bad faith. He points out that he has been without compensation payments for more than seventeen months. He argues that the appellant's points of error are patently frivolous, so opposed to logical argument and legal precedent as to indicate a lack of good faith and says that this appeal was taken to force him to settle

his case in order to avoid the delay of appeal and to prejudice him economically.

■ We hold that the statutory interest does not fairly compensate the claimant for the delay occasioned by the appeal in this case. We exercise our discretion under Rule 435 and assess damages against the appellant for delay in the amount of 5% of the original judgment. Charter Oak Fire Insurance Co. v. Adams, 488 S.W.2d 548 (Tex.Civ.App.1972, writ ref. n. r. e.).

Affirmed, with damages for delay at 5% of the trial court's judgment.